UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVANSTON INSURANCE COMPANY,

    Plaintiff,

v.

AMBIS CORPORATION dba AMBASSADOR INSURANCE SERVICES; TIB, INC. dba THANDI INSURANCE BROKERAGE; JASBIR THANDI; MARTHA LYNN MCCOURT; SCAN-VINO LLC dba CHEROKEE FREIGHT LINES; and DOES 1 THROUGH 50, inclusive,

    Defendants.

No. C 04-3644 MHP

**MEMORANDUM AND ORDER**
**Re: Cross-Motions for Summary Judgment**

    On August 27, 2004, plaintiff Evanston Insurance Company ("Evanston") filed this action seeking rescission of the professional liability insurance policy issued to defendants TIB, Inc. and Ambis Corporation dba Ambassador Insurance Services ("Ambassador") as well as reimbursement of all benefits paid under that policy. Now before the court are the cross-motions for summary judgment filed by Evanston and by defendants Ambassador, TIB, and Jasbir S. Thandi. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

    Evanston is an insurance company incorporated in the state of Illinois with its principal place of business in that state. Pl.'s Compl. ¶ 3. Defendants Ambassador and TIB are wholesale insurance brokerages located in Oakland, California. Id. ¶¶ 4-5; Williams Decl., Exh. A (hereinafter "Thandi Dep.") at 24-25.[1] Defendant Scan-Vino LLC is a California limited liability company that operates a trucking

1  business located in Stockton, California. Pl.'s Compl. ¶¶ 17-20; Scan-Vino Compl. ¶ 17. Also named as

2  defendants are Jasbir Thandi, the former president of Ambassador and TIB, and Martha McCourt,

3  Ambassador's vice president and senior underwriter. Thandi Dep. at 16-18, 51-52.[2]

4        Evanston's complaint seeks rescission of a professional liability insurance policy that it issued to

5  Ambassador and TIB in June 2003. In applying for that policy, the defendant insureds were asked the

6  following question:

7,8,9      Are you, or are any of your partners, directors, solicitors, office brokers or employees, aware of any circumstances or any allegations or contentions or any other incident which may result in a claim against you, your predecessors in business or any past or present partner, officer, director, solicitor, office broker or employee?

10  Saunders Decl., Exh. E at 5. On June 24, 2003, Thandi, acting on behalf of Ambassador and TIB,

11  answered "No," id. at 5-6, and after receipt of the application and supplemental claim form, Evanston

12  agreed to be bound by the contract of insurance on June 27, 2003. Id., Exhs. G-I.

13        Pursuant to that agreement, Evanston issued a professional liability insurance policy providing

14  coverage for claims made against the insureds during the policy period. See generally Pl.'s Compl., Exh.

15  A. That policy includes a condition concerning the representations made in the application for coverage,

16  which provides that all statements that the insured made in the application "shall be deemed material and

17  that [the] policy is issued in reliance upon the truth of such representations." Id. at 5. Ambassador and

18  TIB accepted the terms of the policy, and coverage became effective on June 26, 2003, one day prior to

19  the date that Evanston agreed to be bound. Pl.'s Compl. ¶ 15; Defs.' Answer ¶ 15.

20        Meanwhile, on or about May 12, 2003, ISU Insurance Services, a retail broker acting on behalf of

21  Scan Vino, requested that Ambassador provide it with a quote for commercial liability umbrella coverage.

22  Pl.'s Compl. ¶ 16; Defs.' Answer ¶ 16. On approximately June 12, 2003, McCourt responded to this

23  request on Ambassador's behalf and provided a $350,000 quote for a $5 million Lloyd's of London

24  umbrella policy. Pl.'s Compl. ¶ 17; Williams Decl., Exh. B. However, McCourt had not contacted

25  Lloyd's—or any other insurer—for the purpose of obtaining a quote for Scan Vino. Thandi Decl., Exh. C.

26  at 1. Rather, as she explained in her June 15, 2004 letter to Thandi,[3] McCourt undertook to fabricate a

27  quote for the Lloyd's policy by randomly selecting four Lloyd's syndicates, copying the umbrella policy

UNITED STATES DISTRICT COURT
For the Northern District of California

form and supporting endorsements from the Insurance Services Office ("ISO") manual, and randomly selecting percentages for each of the four syndicates so that they would add up to 100 percent. Id. To determine the premium, McCourt simply asked ISU what Scan Vino would be willing to pay and entered that amount in order to generate an invoice. Id.

Apparently, McCourt's motivation to defraud Scan Vino arose from her concern that Ambassador would lose the ISU account, and that consequently, her job as Ambassador's senior underwriter would be at risk. Id. She also appears to have relied upon Thandi's then-ongoing efforts to secure an appointment to sell insurance on behalf of Burlington Insurance Company, believing that she would be able to place Scan Vino's umbrella policy with Burlington after those efforts came to fruition. Id. However, after it became apparent that Thandi would be unable to secure the appointment with Burlington, McCourt persisted in her scheme to retain the ISU account through fraudulent means and purported to issue the Scan Vino policy without ever contacting Lloyd's or securing insurance for Scan Vino from any source. Id.

McCourt's scheme began to unravel at some point in the spring of 2004, when she was contacted regarding a multifatality accident involving one of Scan Vino's trucks. Id. at 1-2. Unable to produce the requested copies of the nonexistent Lloyd's policy, McCourt penned the aforementioned letter in which she informed Thandi of her actions and apologized for her conduct. Id. at 2. McCourt's letter further admitted to fabricating a quote for an umbrella insurance policy that she provided to Roy Miller in September 2003. Id. In addition, Lloyd's response to an Evanston subpoena indicates that McCourt falsely represented that Lloyd's syndicates had agreed to be bound to at least two other commercial liability umbrella policies, the first being issued to Frank C. Allege Trucking, Inc. and purporting to provide coverage commencing on January 1, 2003 and the second identifying the insured as Burtschi Transport, Inc. and providing coverage from June 1, 2003 to June 1, 2004. Wertzer Decl., Exhs. B-H.[4]

McCourt's misrepresentations are now the subject of an action that Scan-Vino filed in San Joaquin County Superior Court on July 28, 2004, Scan-Vino LCC v. Ambis Corp., No. CV 023989 (hereinafter "the Scan-Vino action" or "the state court action"). Scan Vino's complaint asserts that despite their representations to the contrary, Ambassador, Thandi, McCourt, and a host of other defendants failed to procure the aforementioned commercial liability umbrella policy. See generally Scan-Vino Compl. ¶¶ 17-

3

35. Based on those allegations, Scan-Vino asserts causes of action for breach of contract, implied indemnity, negligent procurement, negligent misrepresentation, fraud, suppression of material facts, breach of fiduciary duty, and unfair competition. Id. ¶¶ 35-117. Evanston has agreed to defend Ambassador, TIB, and Thandi against Scan-Vino's claims subject to a reservation of rights. Pl.'s Compl., Exh. D.

The instant action was filed on August 27, 2004. In its complaint, Evanston alleges that Ambassador and TIB fraudulently concealed their potential liabilities relating to the Scan-Vino account, thereby causing Evanston to provide the defendant insureds with professional liability insurance coverage in reliance on those misrepresentations. Id. ¶¶ 23-24. Consequently, Evanston seeks rescission of the policy that it issued to Ambassador and TIB and reimbursement for the costs of defending the TIB, Ambassador, and Thandi in the Scan-Vino action and for all sums paid to settle that action or to indemnify the defendant insureds in the event of a judgment in Scan Vino's favor. Id. ¶ 28.

On November 23, 2004, Ambassador, TIB, and Thandi (hereinafter "defendants") moved to stay proceedings in this court pending resolution of the underlying state court liability action.[5] The court denied that motion on February 18, 2005, concluding that defendants had failed to establish the existence of "exceptional circumstances" that would warrant staying proceedings in deference to the related state court action under Colorado River Water District v. United States, 424 U.S. 800 (1976).

On April 18, 2005, Evanston filed a motion for summary judgment that material misrepresentations contained in the policy application that Thandi completed in June 2003 entitle it rescind its contract of insurance with Ambassador and TIB. Defendants oppose that motion and cross-move for summary judgment on their counterclaim for declaratory relief, which seeks a judicial declaration that Evanston has a duty to defend the claims against them in the Scan Vino action. The following memorandum and order address the issues raised by the parties' motions.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute involving a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. On the other hand, where the moving party bears the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991)).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). However, the court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion, Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

## DISCUSSION

The question presented by the parties' cross-motions for summary judgment is whether Evanston is entitled to rescind *ab initio* the professional liability insurance policy that it issued to defendants Ambassador and TIB on June 27, 2003. Evanston argues that defendants' failure to disclose McCourt's fraudulent conduct in their application for insurance coverage renders the policy that issued in reliance on that application voidable under California law. Thus, Evanston urges the court to grant summary judgment on its claim for rescission.

In determining whether rescission of the Evanston policy is appropriate, the court begins its inquiry with the plain meaning of the California Insurance Code, which states that "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Cal. Ins. Code § 331. Likewise, California Insurance Code § 359 provides that "[i]f a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." Id. § 359. California courts have characterized these provisions as imposing "heavy burdens of disclosure" upon the parties to a contract of insurance. Mitchell v. United Nat'l Ins. Co., 127 Cal. App. 4th 457, 467 (2005) (quoting Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal. App. 3d 169, 179-80 (1988)). Consequently, an insured's material misrepresentation in an application for insurance coverage entitles the insurer to rescind any policy that issues in reliance on that application, even if no actual intent to deceive is shown. Imperial Cas., 198 Cal. App. 3d at 179-80; see also Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th Cir. 2001) (applying California law).

In other words, the question here is not whether Thandi had an intent to deceive Evanston at the time that he applied for professional liability insurance on behalf of Ambassador and TIB, but rather whether the statements set forth in the policy application were materially false. Notably, the application for the Evanston policy did more than merely request that Thandi disclose any potential for liability of which he was personally aware; it also expressly imposed on him a duty to inquire into all risks of liability that might be known to "any past or present partner, officer, director, solicitor, office broker or employee" of the defendant insureds. Saunders Decl., Exh. E at 5. As a shareholder in Ambassador as well as the company's vice president and senior underwriter, McCourt fell within more than one of these categories at

6

the time that Thandi completed the Evanston application. Indeed, even absent such a provision in the application, "[i]t is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself." W. R. Grace & Co., Inc. v. Western U.S. Indus., Inc., 608 F.2d 1214, 1219 (9th Cir. 1979) (citation omitted), cert. denied, 446 U.S. 953 (1980); see also United Cal. Bank v. Maltzman, 44 Cal. App. 3d 41, 51-52 (1974) ("Knowledge of an officer of a corporation within the scope of his duties is imputed to the corporation."). Thus, to the extent that McCourt was aware of circumstances that had the potential to result in claims on the errors and omissions policy that Evanston subsequently issued, her knowledge of such circumstances was chargeable to Thandi and hence to Ambassador and TIB.

In light of this conclusion, it cannot be seriously disputed that at least one of the defendant insureds, Ambassador, breached the duty of disclosure that it owed to Evanston. Several weeks prior to the date that Thandi completed the Evanston application on Ambassador's behalf, McCourt had provided Scan Vino with a fabricated quote for commercial liability umbrella insurance. Thandi Decl., Exh. C at 1-2. Admittedly, it is unclear from McCourt's letter what her precise intentions were on the date that Thandi applied for the Evanston policy. As defendants point out, she may have still intended to place the policy with another insurer—most likely Burlington—even if she never intended to obtain insurance from Lloyd's of London, the purported source of the fabricated quote. This is a question of fact that cannot be resolved on summary judgment. However, defendants' suggestion that resolution of this factual dispute in its favor would somehow relieve them of responsibility for McCourt's prior fraudulent conduct—that is, the act of fabricating the quote—is incorrect as a matter of law. It is also apparent that McCourt's conduct with respect to the Scan Vino account was not an isolated incident; the record shows that she confessed to fabricating a quote for Ambassador's Ray Miller account in September 2003, id. at 2, and uncontroverted evidence establishes that McCourt provided two other applicants with false quotes for Lloyd's of London umbrella policies prior to June 24, 2003. Wertzer Decl., Exhs. B-H. Nor can it be disputed that McCourt's conduct gave rise to "circumstances . . . which may result in a claim against [Ambassador]." See Saunders Decl., Exh. E at 5. Accordingly, the court holds as a matter of law that Thandi provided Evanston with false information when he applied for professional liability insurance on Ambassador's behalf.

7

That leaves the court to consider the question of materiality. The standard that applies in the instant action is set forth in California Insurance Code § 334, which provides that the materiality of a misrepresentation must be judged "by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code § 334. Defendants, alluding to the factual nature of this inquiry, appear to believe that it has no obligation to produce evidence to defeat a motion for summary judgment on the materiality issue. However, under California law, an applicant's response to a question contained in an insurance policy application is ordinarily presumed to be material. See Thompson v. Occidental Life Ins. Co., 9 Cal. 3d 904, 916 (1973) (citations omitted) (noting that "[t]he fact that an insurer had demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law"). In the case at bar, this presumption is further bolstered by the language in the Evanston policy, which states that any representations that the insured made in the application "shall be deemed material and that this policy is issued in reliance upon the truth of such representations." Pl.'s Compl., Exh. A, Professional Liability Policy at 5 ("Applications"). The court also notes that Evanston has submitted the declaration of an executive at the underwriter who issued the policy to Ambassador and TIB attesting to the fact that the policy would not have been issued if the underwriter had been aware of McCourt's fraudulent conduct. Saunders ¶ 5. In light of the presumptively material nature of the representations made in Evanston's policy application and defendants' failure to rebut this presumption in any way, this evidence is more than sufficient to establish materiality as a matter of law. The court therefore holds that Ambassador failed to disclose material facts in its application for the professional liability insurance policy at issue.

Based on this material nondisclosure, Evanston is entitled to rescind its contract of insurance with Ambassador. See Imperial Cas., 198 Cal. App. 3d at 179-80. Furthermore, under California Insurance Code § 650, the rescission of an insurance contract "shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise." Cal. Ins. Code § 650. While defendants purport to identify such a "severability" provision in the Evanston policy, that provision plainly applies only to the submission of false or fraudulent *claims*. Pl.'s Compl., Exh. A, Professional Liability Policy at 5

8

("False or Fraudulent Claims"). The effect of misrepresentations in the policy application is addressed in a separate paragraph, which does not provide for the severability of the contract with respect to TIB or additional insureds. See id. ("Applications"). Thus, because Evanston is entitled to rescission as to all insureds, the court grants its motion for summary judgment in its entirety. For the same reason, defendants' motion for summary judgment on their counterclaim for declaratory relief must be denied.

CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's motion for summary judgment and DENIES defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: May 16, 2005

/s/
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

**ENDNOTES**

1. Of the two insurers named as defendants, only Ambassador is licensed to sell the type of "surplus lines" insurance policy at issue in the underlying Scan Vino action. Thandi Dep. at 24-25.

2. At all times relevant to the instant action, Thandi and McCourt collectively owned all outstanding stock in Ambassador. Thandi Dep. at 16-17. Thandi subsequently transferred his Ambassador shares to McCourt. Id. at 19.

3. In a footnote in their opposition, defendants appear to suggest that McCourt's June 14, 2004 letter is improperly authenticated and hence inadmissible. This observation is truly perplexing, given that defendants admitted the authenticity of McCourt's letter in answering Evanston's complaint. Pl.'s Compl. ¶ 19; Defs.' Answer ¶ 19. Furthermore, McCourt's letter was introduced into evidence by *defendants*, and its authenticity is clearly established by *Thandi's own declaration*, which characterizes the letter as "a true and correct copy of a letter [that] I received from Martha McCourt on or about June 15, 2004." Thandi Decl. ¶ 4. In light of these prior submissions, defendants' suggestion that McCourt's letter is not competent evidence is (to put it mildly) frivolous, and the court need not consider it seriously.

4. Defendants objects to evidence relating to the Burtschi Transport and Alegre Trucking policies on the grounds that John Williams, counsel for Evanston, was not a proper sponsor of the documents and that he could not establish their admissibility under the business records exception to the hearsay rule, Fed. R. Evid. 803(6). Evanston has now submitted the assertedly inadmissible documents as Exhibits B through H of the Declaration of Wayne Wertzer, the custodian of records at Lloyd's United States subsidiary. In that declaration, Wertzer attests to the authenticity of the documents and lays the foundation for their admissibility as business records. Wertzer Decl. ¶¶ 1-3. The court therefore denies defendants' evidentiary objection.

5. McCourt, also named as a defendant, failed to answer Evanston's complaint, and the court entered default judgment against her on February 14, 2005.